# Peerson *v.* Gray, *et al.*

*Bill to Cancel and Surrender Mortgage and Stock Certificate, and to Re-organize.*

(Decided November 11, 1913.   63 South. 467.)

1. *Equity; Demurrer; Admissions.*—A demurrer to a bill in equity confesses the facts well pleaded therein.

2. *Corporations; Actions Against Officers; Offer to Do Equity.*— A bill by certain stockholders of a corporation on behalf of all of the stockholders against the president of the corporation which alleges the president purchased land from himself at three times its value, giving a mortgage for the purchase price, erected the building thereon with the money of the corporation, and then foreclosed the mortgage becoming the purchaser at the foreclosure sale, and praying that the mortgage be cancelled, at the same time offering to pay the rea-

sonable value of the property to be ascertained by the court sufficiently offered to do equity, and was not demurrable on that ground.

3. *Corporations; Officers; Stockholder's Bill.*—Where the president of a corporation fraudulently sold to the corporation land at three times its real value, taking a mortgage thereon executed by himself and the secretary to himself, carried on the business of the corporation until it failed, and then foreclosed the mortgage, becoming a purchaser himself at the foreclosure sale of the property on which has been erected a building with the money of the corporation at an expense greatly exceeding the value of the lot, the stockholders filing a bill on behalf of all the other stockholders were entitled to have the foreclosure sale set aside and to have an accounting, where they offered to pay the reasonable value of the land; the general rule that a party cannot affirm a contract in part and rescind it in part upon the ground of fraud is not without limitation.

4. *Same; Corporate Mortgages; Consent of Stockholders.*—A bill at the suit of stockholders to set aside a purchase money mortgage executed by the president and secretary without the consent of the stockholders or directors as is required by subdivision 3, section 3481, Code 1907, is not subject to demurrer on the ground that the consent of the stockholders was unnecessary.

APPEAL from Lauderdale Chancery Court.

Heard before Hon. W. H. SIMPSON.

Bill by W. M. Gray and others, on behalf of themselves and all the other stockholders of the Lauderdale County Farmers' Union Warehouse Company, against J. M. Peerson to cancel and surrender a mortgage, and to cancel and surrender certain certificates of stock and for the purpose of calling a stockholder's meeting to reorganize. From a decree overruling demurrers to the bill, respondent appeals. Affirmed.

After stating the parties and their residences, the bill alleges that the above-named corporation was organized under the laws of Alabam in the year 1907, and that J. M. Peerson at that time became president, and has ever since been president, and as such was the principal managing officer of said corporation, and has so remained, and that each complainant is a stockholder of said corporation; that on September 5, 1907, the said Peerson, as such president, for and on behalf of the corporation, purchased from himself certain lands describ-

ed, agreeing on behalf of said corporation to pay to himself as seller for said lot the sum of $3,000, said purchase price to be paid by issuing to him $500 of the capital stock of said corporation, and the balance to be paid $500 annually for five years, with 8 per cent. interest, the deferred payment to be evidenced by five promissory notes of said corporation in the sum of $500 each, as will more fully appear from a copy of the deed, which is attached and asked to be made a part of the bill; and that on the above-named date said Peerson, as president, together with T. F. Johnson, as secretary and treasurer, executed a mortgage to said Peerson for and on behalf of said corporation, conveying to the said Peerson said above-described real estate to secure the payment of said notes and the mortgages referred to and made a part of the bill. It is then alleged on information and belief that the real estate purchased by Peerson as such president from himself was not in fact worth more than $1,000; and it is alleged as a fact that a few months before the purchase Peerson had purchased the said lot for the sum of $900. It is then alleged: That Peerson was an active promoter and adviser in the organization of the corporation, was a prominent member of the Farmers' Union of Alabama, and that the farmers of Lauderdale county relied greatly on his advice and reposed in him great confidence and trust, and actuated by his representations as to the value of the farmers' warehouse, a large number of farmers of Lauderdale county subscribed to the capital stock of the corporation, and that $6,000 was subscribed for, and that more than $5,000 was paid in cash, the par value of the stock being $10 per share, and that very few of the subscriptions exceeded one share, or $10, so that several hundred farmers of Lauderdale county became stockholders. Said stockholders subscribed for the stock and paid in their

money for the purpose of acquiring a suitable site and erecting thereon a suitable warehouse for the handling of cotton and other farm products, and for the purpose of operating said warehouse, and that said Peerson was the person who was relied upon by the said stockholders to recommend and secure a suitable site and to erect the warehouse and arrange for the management of it. That after the said Peerson, as such president, and as such trusted representative, had, on behalf of said corporation, purchased from himself said lot in Florence at a pretended price of fully three times its market value and had given himself a mortgage upon the same for the sum of $2,500, then the said Peerson proceeded to use the funds paid in by the stockholders of said corporation for the purpose of erecting upon said mortgaged property a brick warehouse, upon the erection of which said Peerson expended all the funds so paid in by the stockholders. That after the erection of the warehouse with the funds paid in by the stockholders, upon the lot so mortgaged for largely more than its original value to himself, said Peerson never operated said warehouse, but allowed the same to continue empty and idle. That said Peerson, as such president, never called any meeting of the stockholders, never made any report of his receipts and disbursements to the stockholders, but wholly neglected and abandoned the interests of the stockholders and permitted said property to remain unused until the spring of 1911. That in the early part of 1911, and on, to wit, the 6th day of April, 1911, the said Peerson sold said property under the pretended authority of the mortgage hereinbefore referred to, and at the said pretended mortgage sale the said Peerson became the purchaser of said property, so that by taking advantage of the trust reposed in him by the farmers of Lauderdale county, and taking advantage of the fact

that each stockholder had such a small interest in said property, and taking advantage of the further fact that said stockholders consisted of a large number of inexperienced business men scattered throughout the county, said Peerson had attempted to procure for himself the said lot, together with the warehouse costing the farmers of Lauderdale county between $5,000 and $6,000, all for the sum of $900, which he originally paid for said lot.

Complainants allege that said Peerson never procured, in any manner prescribed by law, the consent of the stockholders of the said corporation to the execution of the mortgage hereinbefore referred to; and complainants further allege that said Peerson never procured, in the manner prescribed by law, the consent of the directors of said corporation to the execution of said mortgage; and complainants further allege that said Peerson executed said mortgage upon the property hereinbefore referred to without the authority of the stockholders or the directors of said corporation; and complainants further show unto the court that the attempt of the said Peerson to sell to said corporation, of which he was the trusted manager, said lot at such an exorbitant price constitutes a fraud upon said stockholders and invested the same in the erection of a building on said lot, and said corporation and the stockholders thereof are not able to have said attempted sale set aside as a fraud, without losing the advantage of the investment of their funds in said warehouse, but they are advised and believe, and so state the fact to be, that they are entitled to have a court of equity to ascertain and determine what was the reasonable market value of said lot at the time of said alleged purchase of said Peerson from himself; and they are entitled to have said alleged mortgage set aside as fraudulent and void and as having been executed without authority of law; and complainants

allege that they are able and willing to pay on behalf of themselves and such other stockholders as may become parties to this bill of complaint whatever reasonable amount the court should ascertain and determine said Peerson is entitled to for the purchase price of said lot so attempted to be sold by himself to said corporation. Complainants further allege and show unto the court that said Peerson, taking advantage of the inexperience and discouragement of said small stockholders, has been enabled to purchase a large number of shares belonging to the stockholders, so that, taking advantage of the large block of stock, to wit, 50 shares, wrongfully issued to himself as part of the alleged purchase price of said lot, complainants are informed and believe, and so state the fact to be, that said Peerson now controls a majority of the outstanding stock of said corporation; but complainants allege and show unto the court that said Peerson, as such president, never kept, nor caused to be kept, any register of stockholders, as prescribed in section 3473 of the Code of Alabama, so that complainants are not able to ascertain who are stockholders of said corporation. Complainants are informed and believe and so state the fact to be that said Peerson had acquired control of all the shares of stock belonging to those persons who were originally directors of said corporation; and that there is in fact at the present time no board of directors, all the affairs and interests of said corporation having been wholly abandoned by its officers, and that there is in fact at this time no board of directors, all the affairs and interests of said corporation having been wholly abandoned by its officers, and all of its property having been appropriated and converted to his own use by the said Peerson. Complainants further allege and show unto the court that after said Peerson had sold said lot to himself under the pretended power

contained in said mortgage, further presuming upon the faith and inexperience of the stockholders, and for the purpose of further lulling them into a further sense of security and waiting until their rights should be barred, said Peerson on the 21st day of August, 1911, issued a circular letter to the stockholders in which he expressed the desire to make the stock worth every cent possible, and saying, "My advice to you is, as it always has been, to hold your stock." He further assured the stockholders that "victory is just ahead. Let us stand firm by our interests and watch our competitors sit up and try to look pleasant." But he said nothing of having sold their property and bid it in himself; and complainants aver that under the facts the only victory ahead was a victory for Peerson over his trusting and misguided "brethren" by which he would acquire title to all the property of the corporation, and bring to completion his fraudulent design. And complainants further allege that it would be useless and in vain for them to appeal to said Peerson to act in their behalf, as stockholders of the corporation, and that they are therefore compelled to appeal to a court of equity for relief as stockholders; and they further allege and show unto the court that the register of this court, or some other person to be designated by the court, should be ordered and directed to call a meeting of the stockholders of said corporation for the purpose of reorganizing its affairs and selecting proper officers for its management; or, if the court should deem such a course inexpedient, then the court ought to appoint a receiver for the assets of said corporation to act for and in behalf of such stockholders as desire to protect their interests and are able and willing to contribute their pro rata share of the funds required to pay for said lot such as the court may ascertain to be just and equitable.

[Peerson v. Gray, et al.]

It is alleged that Peerson, as president, issued to Johnson, the former secretary, a large block of the stock of said corporation, the exact amount being unknown, and that Peerson knew that Johnson never paid for it; that Johnson was insolvent and was insolvent at the time the stock was issued to him; that Peerson knew he was insolvent; and that Peeson had secured by purchase or otherwise said stock owned by Johnson. On these facts, a prayer is based for the relief set out above. The following are the grounds of demurrer insisted on:

"(1) Complainants do not offer to do equity.

"(2) The bill shows that defendant fraudulently sold and conveyed the lands to the corporation and at the same time fraudulently executed to himself a mortgage to secure the purchase money, and complainant seeks to ratify the fraudulent transaction favorable to them and to rescind the fraudulent part which imposes a burden on the corporation.

"(3) Seeks to annul a part of the alleged fraudulent transaction and ratify another part."

"(9) Seeks to have the court make a contract with complainants or said corporation on the one hand and defendant on the other and to require defendant to comply with the same."

"(14) Seeks cancellation of the mortgage because the consent of the stockholders and directors of the corporation were not obtained as required by law, but shows on its face that the mortgage was given for the purchase price of the property therein described, and that the mortgage was not required to be authorized by the stockholders or directors in the manner described in said bill of complaint."

A. A. WILLIAMS, for appellant. The offer to do equity is not sufficient.—109 Ala. 148; 130 Ala. 503; Sim's

Ch. sec. 292; 142 Ala. 520. A party cannot ratify a part of an alleged fraudulent transaction and rescind another part.—10 Cyc. 1072; 142 Ala. 520; 2 Pomm. Eq. sec. 916. Under the allegations of the bill it is not necessary to have the consent and authority of the stockholders to the execution of the mortgage.—*Stanley v. Johnson,* 113 Ala. 344; 33 Mo. 377; 134 N. Y. 598.

ASHCRAFT & BRADSHAW, for appellee. A director cannot bind the corporation in a transaction in which he is adversely interested.—*O'Connor v. Coosa,* 95 Ala. 614. While a rescission must be in toto, if a wrongdoer by his own act complicates a case so that full restoration is impossible, he has but himself to blame.—61 N. Y. 153; 81 N. Y. 397; 47 Barb. 285; 43 Am. Dec. 651. Complainants may retain the property and deduct the difference between the fraudulent valuation and the real valuation.—*Ward v. Reynolds,* 32 Ala. 393. The mortgage was invalid, and was not authorized nor ratified.—*So. B. & L. Assn. v. Casa Grande Co.,* 128 Ala. 624; 131 Pa. St. 593; 18 Atl. 1063.

DOWDELL, C. J.—The appeal in this case is taken from the decree of the chancellor overruling a demurrer to the bill. The demurrer set down 14 grounds, and each ground is separately assigned on the record for error; but only the first, second, third, ninth, and fourteenth are insisted on in argument.

The first ground is that the complainants do not offer to do equity. The demurrer confesses the facts stated in the bill. The bill shows that the respondent occupied a position of trust and confidence, and avers that the respondent, as such trustee, committed a fraud on the complainants, and offers to pay the reasonable value of the property, to be ascertained by the court, in refer-

ence to which the fraud is alleged. This we think is a sufficient offer to do equity to save the bill from this ground of demurrer.

As a general rule a party cannot affirm a contract in part and rescind in part upon the ground of fraud, but this rule is not without its limitations. And this is true in some instances, as here, where the party occupies the relation of trust and confidence and so acts and so complicates matters as that complete equity cannot be done by the application of the above-mentioned general rule. The respondent was a director and the president of the corporation, and sold the property in question, which was his own, to the corporation for three times its value as alleged in the bill and which the demurrer admits, and took a mortgage on the same, executed by himself and the secretary of the corporation to himself, and under these conditions carried on the business of the corporation until the concern failed, and then foreclosed the mortgage under powers, becoming the purchaser, and taking the title to himself. The complainants, stockholders, are entitled under these circumstances, on the allegations of fraud, to have the foreclosure sale set aside and have an accounting.

There was no authority shown for the execution of the mortgage, by the stockholders of the corporation, nor any subsequent ratification of it by them. The cases cited by counsel for appellant are therefore, we think, without application on the facts to the present case.

Section 3481, subd. 3, of the Code of 1907, provides: "No bonded indebtedness of a corporation shall be created or increased, nor its real property mortgaged, except by the consent of the persons holding the larger amount in value of the capital stock of the corporation present and voting in person or by proxy, at

the meeting of the stockholders called for that purpose, or at a regular meeting."

The bill, we think, contains equity and is not open to any of the grounds of demurrer insisted on in argument and brief of counsel; and, finding no reversible error, the decree of the chancellor overruling the demurrer will be affirmed.

Affirmed.

ANDERSON, MAYFIELD, and DE GRAFFENRIED, JJ., concur.